973 F.2d 169
 PORT AUTHORITY POLICE BENEVOLENT ASSOCIATION, INC.; John
Trotter, Ltd., a New York Corporation,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE DEPARTMENT;
Port Authority of New York and New Jersey;
Charles Knox, as Superintendent of
Police of the Port Authority
of New York and New Jersey,
John Trotter, Ltd., Appellant in 91-5921,
Port Authority Police Benevolent Association, Inc.,
Appellant in 91-5922.
 Nos. 91-5921, 91-5922.
 United States Court of Appeals,
Third Circuit.
 Argued May 18, 1992.
Decided Aug. 7, 1992.
 
 Joseph B. Fiorenzo (argued), Sokol, Behot and Fiorenzo, Hackensack, N.J., for appellant John Trotter, Ltd.
 Philip P. Scalo, Fort Lee, N.J., for appellant Port Authority Police Benev. Ass'n, Inc.
 Donald F. Burke (argued), Hugh H. Welsh, Arthur P. Berg, Tirza S. Wahrman, Newark, N.J., for appellees Port Authority Police Dept. and Knox.
 Before: HUTCHINSON, COWEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 On this appeal, we review the district court's order which dismissed, on Younger abstention grounds, the complaint of the Port Authority Police Benevolent Association ("PBA") and Trotter, a fundraising organization employed by the PBA. In their complaint, the PBA and Trotter had, essentially, requested the district court to review the order of a New York state trial court. The order of the New York state court had enjoined the PBA and Trotter from soliciting contributions from Port Authority tenants.
 
 
 2
 Because the requirements for Younger abstention are satisfied in this case, and because federal district courts may not exercise appellate jurisdiction over orders issued by state courts, we will affirm the district court's dismissal of the complaint of the PBA and Trotter.[1]
 
 I.
 
 3
 The PBA, a non-profit organization of police officers employed by the New York/New Jersey Port Authority, hired Trotter, a fundraising organization, to solicit contributions. Trotter commenced solicitations on PBA's behalf in January 1991.
 
 
 4
 Soon thereafter, Donald Lee, the Acting Director of the Port Authority's Public Safety Department, requested the PBA and Trotter to halt its solicitation of donations. Lee based his directive on the Port Authority's General Rules and Regulations, which prohibit unauthorized solicitations by Port Authority employees of Port Authority tenants. The relevant Rule provided in pertinent part:
 
 
 5
 No employee shall, without the express written approval of the Office of the Executive Director, solicit or accept from any Port Authority patron, tenant or other person doing business with the Port Authority, either for himself or any organization or group, any of the following: a contribution, gift, subscription, or other thing of value--either directly or through the medium of tickets to benefits or other functions, advertising space in programs, or any device whatever. Application for this approval is made through the Personnel Department. Application from departmental organizations must first pass through department channels.
 
 
 6
 Port Authority Instruction 15-5.01. The PBA, however, rejected Mr. Lee's request and continued to solicit contributions from Port Authority tenants in violation of the Port Authority's Rules and Regulations.
 
 
 7
 On June 12, 1991, the Port Authority, seeking to enjoin further solicitations of contributions from Port Authority tenants by the PBA and Trotter, filed a complaint and order to show cause in the Supreme Court of New York, New York County. On July 3, 1991, the PBA filed papers in opposition to the Port Authority's request for injunctive relief. In their papers, the PBA argued that its solicitation of donations constituted protected speech under the First Amendment to the United States Constitution, and that the Port Authority's rules regulating solicitation of tenants by Port Authority employees therefore violated the PBA's First Amendment rights.
 
 
 8
 On July 12, 1991, Judge Tompkins of the New York Supreme Court granted the Port Authority's requested preliminary injunction against PBA and Trotter. The judge enjoined the PBA and Trotter from:
 
 
 9
 soliciting funds of any kind, including but not limited to, contributions or donations for a PBA Yearbook and Buyers' Guide from Port Authority tenants, patrons, or other persons doing business with the Port Authority of New York and New Jersey....
 
 
 10
 (A. 23a). On July 23, 1991, the PBA filed a timely notice of appeal to the Appellate Division of the Supreme Court of New York from the trial court's grant of a preliminary injunction.
 
 
 11
 On September 16, 1991, the PBA and Trotter filed a complaint in the United States District Court for the District of New Jersey, seeking a temporary restraining order and a preliminary injunction which would enjoin the Port Authority from enforcing its regulation prohibiting employee solicitations. The PBA and Trotter raised the same constitutional argument that the PBA had previously raised unsuccessfully in the New York state court. At a September 17, 1991 hearing before the district court, Trotter's counsel conceded that an injunction against the Port Authority would, if granted, effectively enjoin the enforcement of the earlier order of the New York state court which had entered a preliminary injunction against the PBA and Trotter:
 
 
 12
 THE COURT: The application you have made to the Court in effect is to enjoin the enforcement of a State Court preliminary injunction. That is really what you are looking for, is it not?
 
 
 13
 COUNSEL FOR TROTTER: That is the net effect of the ruling, and there is no question about it.
 
 
 14
 (A. 72-73).
 
 
 15
 At the September 17, 1991 hearing, the district court denied the motion of the PBA and Trotter for a temporary restraining order. The district court noted that the PBA and Trotter had been on notice since January, 1991 that their conduct violated the Port Authority's internal rules, and that their "dilatoriness in asserting their rights was inconsistent with their allegation of irreparable harm." (A. 121).
 
 
 16
 On October 11, 1991, the district court, citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), abstained from exercising jurisdiction over the PBA's complaint. The court held that an exercise of federal jurisdiction over the PBA's complaint would unnecessarily interfere with New York State's substantial interest in enforcing the New York state court order which had enjoined the PBA from soliciting Port Authority tenants.
 
 
 17
 PBA and Trotter filed a timely notice of appeal from the district court's decision to abstain from exercising jurisdiction.
 
 II.
 
 18
 We review for abuse of discretion the district court's decision to abstain from exercising jurisdiction. However, the district court's discretion to abstain is quite narrow, and is limited to those cases that meet the abstention requirements established by the Supreme Court. See United Services Auto. Ass'n v. Muir, 792 F.2d 356, 361 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987) ("[A] district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements.").
 
 III.
 A.
 
 19
 In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that principles of federalism and comity require district courts to abstain from enjoining pending state criminal proceedings absent extraordinary circumstances. Younger thus significantly limited the power of the federal courts to interfere with state judicial proceedings. The Supreme Court has since expanded the reach of this doctrine such that federal courts now must also abstain from enjoining, explicitly or implicitly, state civil proceedings that implicate important state interests. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).
 
 
 20
 On the basis of the Supreme Court's analysis in Middlesex, we have articulated three requirements which must be met before a federal court may properly invoke the Younger abstention doctrine:
 
 
 21
 (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.
 
 
 22
 Schall v. Joyce, 885 F.2d 101, 106 (3d Cir.1989). Whenever all three of these requirements are satisfied, abstention is appropriate absent a showing of bad faith prosecution, harassment, or a patently unconstitutional rule that will cause irreparable injury to the plaintiff. See id.
 
 
 23
 Application of the three Middlesex requirements to the facts in the present case demonstrates that the district court properly exercised its discretion in abstaining from exercising jurisdiction over the complaint of the PBA and Trotter. First, proceedings are pending in New York on the very issue raised by the PBA and Trotter in their district court complaint. The PBA and Trotter wish to argue in federal court, as they did before the New York state court, that the Port Authority regulation prohibiting unauthorized solicitations by Port Authority employees of Port Authority tenants violates the First Amendment to the United States Constitution. This constitutional argument, raised by the PBA and Trotter in their federal complaint, was resolved by the New York state court in its order granting a preliminary injunction to the Port Authority. That preliminary injunction order is currently being appealed within the New York state court system. Because litigation is currently pending in the New York state court concerning the very same parties and the very same issues as in the present federal suit, the first requirement for Younger abstention--ongoing state proceedings of a judicial nature--is satisfied in the present case.[2]
 
 
 24
 Similarly, the PBA and Trotter had, and continue to have, an opportunity to adequately raise their federal claims in New York state court proceedings, thereby satisfying the third requirement for Younger abstention--an adequate opportunity to raise federal claims. No "state procedural law" or impediment of similar magnitude prevented, or now prevents, the PBA and Trotter from raising their constitutional concerns in the state courts. See Moore v. Sims, 442 U.S. 415, 432, 99 S.Ct. 2371, 2382, 60 L.Ed.2d 994 (1979) (explaining the meaning of the third prong of the Younger test). See also Winston v. Children and Youth Services, 948 F.2d 1380, 1399-1400 (3d Cir.1991) (Garth, J. dissenting). Whether or not the PBA and Trotter believe that they adequately raised their constitutional concerns in their New York Supreme Court proceeding is immaterial: the third requirement for Younger abstention requires only that there be no inherent bar to the raising of the federal issue in the state courts. "[One] cannot escape Younger abstention by failing to assert ... remedies in a timely manner [in state court]." Pennzoil v. Texaco, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). In addition, it is apparent that the PBA and Trotter intend to fully present their constitutional arguments to an appellate tribunal in New York State. We note that among the issues to be raised on that appeal, as set forth in the PBA's pre-argument statement, is the question of "[w]hether Port Authority Instruction 15-501 was unconstitutionally over-broad and vague." That question is also the central issue raised by the PBA and Trotter in their federal complaint. See Plaintiffs' Federal Complaint, A. 15a (alleging that Port Authority's Instruction 15-501 is unconstitutionally over-broad and vague).
 
 
 25
 The only remaining question, then, is whether the district court's grant of an injunction in favor of the PBA and Trotter, which would conflict with the New York trial court's preliminary injunction, would implicate an important New York state interest. We are satisfied that it would.
 
 
 26
 The Supreme Court, discussing the scope of the "important state interest" requirement for Younger abstention, has explained on more than one occasion that principles of comity and federalism, which inform the Younger abstention doctrine, preclude a federal court from issuing an injunction that would interfere with a state's interest in preserving its courts' ability to enforce judicial orders and judgments. In Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), for example, the Court held that federal courts may not enjoin a state court from holding civil litigants in contempt. The Court reasoned that the state court's preservation of its contempt power constituted a sufficiently important state interest to justify abstention, because the contempt power "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." Id. at 336, n. 12, 97 S.Ct. at 1217, n. 12. Similarly, a federal injunction in favor of the PBA and Trotter would render the New York trial court's injunction in favor of the Port Authority ineffectual and would thus impinge on New York's important interest in preserving its courts' power to enforce their orders.
 
 
 27
 In Pennzoil, the Supreme Court deemed abstention appropriate in a suit brought by Texaco to enjoin Pennzoil from enforcing a Texas court judgment exceeding $11 billion in Pennzoil's favor pending appeal of that judgment to the state appellate court. Texaco had argued that a state law requiring Texaco to post a bond of over $13 billion in order to avoid attachment of its property pending appeal, violated federal due process guarantees because a bond of that size could not possibly be obtained. Nevertheless, the Supreme Court held that federal courts must abstain from deciding Texaco's argument on its merits because interference with the state court's enforcement of its judgments would ignore the "importance to the States of enforcing the orders and judgments of their courts." 481 U.S. at 13, 107 S.Ct. at 1527.
 
 
 28
 Clearly, if federal courts must abstain from reviewing the method by which a state seeks to enforce its orders, as the Court held in Juidice and Pennzoil, then the federal courts must also generally abstain from reviewing the state court orders themselves, where the state provides an adequate forum for appellate review of all claims of a federal nature.
 
 
 29
 The PBA and Trotter attempt to distinguish Pennzoil on the grounds that Pennzoil involved a challenge to the enforcement of a final judgment of a state court, whereas the preliminary injunction issued by the New York court in the present case was interlocutory in nature. While we need not, and do not, hold that federal courts must abstain in every case involving a constitutional challenge to a state court interlocutory order, it is entirely clear to us that interference with the New York state court preliminary injunction in the present case would ignore the principles of comity and federalism that underlie the Younger abstention doctrine. The preliminary injunction issued by the New York court resolved, if only temporarily, the underlying dispute between the parties in the present case. New York State may enforce that dispute just as it would enforce a final order. Federal interference with such enforcement would unjustifiably belittle the ability of New York state courts to resolve federal questions presented in state-court litigation, and would unduly hinder New York's important interest in enabling its courts to issue orders which will be obeyed and enforced.
 
 
 30
 We note that the Court of Appeals for the Seventh Circuit recently held Younger abstention appropriate in a case concerning a federal challenge to a state court interlocutory order. See Owens-Corning Fiberglas Corp. v. Moran, 959 F.2d 634 (7th Cir.1992). Owens-Corning involved an Illinois state court defendant, Owens-Corning Fiberglas Corp. ("Owens-Corning"), which argued before the Illinois state court that the state court's assertion of personal jurisdiction over four of its employees violated the United States Constitution. After the state court judge denied Owens-Corning's motion to quash the notice requiring those four employees to appear at trial, Owens-Corning applied for a peremptory writ from the Supreme Court of Illinois, which denied the application without explanation. Owens-Corning also filed suit in federal district court to prevent the state court from asserting personal jurisdiction over the four employees. The district court dismissed the federal suit for lack of subject matter jurisdiction under the Rooker- Feldman doctrine.[3]
 
 
 31
 On appeal, the Seventh Circuit Court of Appeals chose not to address the question of whether the Rooker- Feldman doctrine applied to interlocutory orders. Instead, the court held abstention appropriate under Younger and Pennzoil because the state had an important interest in enforcing its court's orders. The court thus held that, after Pennzoil, a state's interest in the enforcement of interlocutory orders could merit Younger abstention:
 
 
 32
 [W]e proceed as the Supreme Court did in Pennzoil, inquiring whether the plaintiff has adequately justified federal interference with ongoing litigation. As in Pennzoil, the answer is no.
 
 
 33
 Id. at 635. The court justified abstention by pointing out that the federal question at issue in that case, which had been resolved by the Illinois trial court judge against Owens-Corning, could be appealed within the Illinois state courts:
 
 
 34
 Owens-Corning wants a federal court to beat the state's appellate courts to the punch. Yet litigants properly in federal court must wait patiently for review of a trial judge's orders.... Once the [Illinois] court enters a final judgment, Owens-Corning may appeal and present to the appellate court, next the Supreme Court of Illinois, and eventually the Supreme Court of the United States, its contention that Rule 237(b) is invalid. It would be absurd, an inversion of appropriate principles of federalism, for this court to tell a state trial court in mid-trial what evidence and sanctions are appropriate, while we will not issue such instructions within our own hierarchy of courts.
 
 
 35
 Id. at 636. Similarly, in the present case, the federal question raised by the PBA and Trotter will be decided on appeal by a New York appellate court, and thereafter may be appealed to the New York Court of Appeals and the United States Supreme Court.
 
 
 36
 As we noted above, we need not decide whether every interlocutory state court order would trigger the "important state interest" requirement for Younger abstention. We do hold that a state court preliminary injunction, such as was issued by the New York trial court in the present case, which resolves a federal question later presented to a federal court by the same parties and which can be adequately appealed within the state court system, merits federal abstention. We may not enjoin the operation of such an injunction, because by doing so we would infringe on the legitimate authority of the state courts to resolve disputes which come before them, and we would be interfering with the state's important interest in enforcing its courts' judgments and orders.
 
 B.
 
 37
 Even where the three requirements for Younger abstention are met, abstention is inappropriate where the state court proceedings are being undertaken in bad faith to harass the federal plaintiffs. However, the PBA and Trotter do not level any such accusations regarding the New York state court proceedings.
 
 
 38
 Abstention is also improper under "extraordinary circumstances" such as where a challenged state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph" and federal abstention would cause "irreparable injury." Younger, 401 U.S. at 53, 91 S.Ct. at 755. See also Schall, 885 F.2d at 106. The PBA and Trotter contend that the "extraordinary circumstances" exception to the Younger abstention doctrine applies in the present case because, in their view, the solicitation of funds by Trotter constitutes fully protected speech under the First Amendment, and the Port Authority regulation imposes an unconstitutional prior restraint on that speech, thereby causing the PBA and Trotter irreparable harm.
 
 
 39
 However, the challenged regulation, whose constitutionality we do not decide here, does not fall into the category of statutes or regulations that are so flagrantly unconstitutional as to preclude federal abstention. While the Supreme Court has determined that the solicitation of money by charities or benevolent organizations may constitute protected speech, see Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 628-632, 100 S.Ct. 826, 831-834, 63 L.Ed.2d 73 (1980), the Supreme Court has also determined that where, as here, the government acts in its capacity as an employer, a balancing test must be applied in order to determine the constitutionality of limitations that the government places on the speech of public employees. The employee's speech interests must be weighed against the government's interest in regulating its public services. See, e.g., Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).
 
 
 40
 In holding that the Port Authority regulation at issue in this case is not flagrantly unconstitutional "in every clause, sentence and paragraph," we note, as did the district court in its opinion, that the Port Authority's regulation apparently served the rather significant government interest of "negat[ing] the appearance of overreaching and coerciveness by Port Authority employees who provide essential services to the users of Port Authority facilities." A. 128a, citing Affidavit of Louis LaCapra, Director, Human Resources Department, Port Authority. The challenged regulation cannot therefore be said to justify federal interference in the ongoing state proceedings.
 
 
 41
 In addition, we note that the Supreme Court has often explained that solicitation activities are "undoubtably subject to reasonable regulation," even when such activities constitute speech for First Amendment purposes. See Village of Schaumburg, 444 U.S. at 632, 100 S.Ct. at 833-834. Cf. Int'l Society for Krishna Consciousness, Inc. v. Lee, --- U.S. ----, ----, 112 S.Ct. 2701, 2708, 120 L.Ed.2d 541 (1992) ("We have on many prior occasions noted the disruptive effect that solicitation may have on business."). We therefore cannot hold that the Port Authority regulation was patently unconstitutional.
 
 
 42
 In light of the above, we are satisfied that none of the exceptions to the Younger abstention doctrine apply to the present case, and that the district court properly exercised its discretion in abstaining from taking jurisdiction over the federal complaint filed by the PBA and Trotter.
 
 C.
 
 43
 Although we affirm the district court's dismissal of the complaint of the PBA and Trotter under the Younger abstention doctrine, we note that the complaint of the PBA and Trotter could also have been properly dismissed pursuant to the principle enunciated in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Those cases, which spawned the so-called Rooker-Feldman doctrine, held that lower federal courts lack subject matter jurisdiction to engage in appellate review of state-court determinations or to evaluate constitutional claims that are "inextricably intertwined with the state court's [decision] in a judicial proceeding." Feldman, 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16. See also Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions.").
 
 
 44
 As discussed above in the context of Younger abstention, the PBA and Trotter raised in the federal complaint the same claims which they raised before the New York trial court and which they will argue on appeal within the state court system. Thus, assertion of jurisdiction over their complaint would have required the district court to decide issues that are "inextricably intertwined" with the New York state court's decision. Because a decision on the merits by the district court would constitute an impermissible review of the New York trial court's holding, dismissal of the complaint was appropriate under the Rooker- Feldman doctrine, which instructs us that the only courts empowered to review for constitutional error the New York trial court's preliminary injunction are the appellate New York courts and, ultimately, the Supreme Court of the United States.
 
 
 45
 The PBA and Trotter argue that the Rooker- Feldman doctrine does not apply in the instant case because, in their view, that doctrine only precludes federal review of orders issued by a state's highest court, and does not apply to cases where, as here, litigants seek federal review of an order issued by a lower state court. However, if federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have been plainly in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system. Indeed, most courts of appeals to consider the issue have held that the Rooker- Feldman doctrine applies with equal force when litigants seek federal review of the orders of lower state courts.
 
 
 46
 In Keene Corp. v. Cass, 908 F.2d 293 (8th Cir.1990), for example, the Court of Appeals for the Eighth Circuit affirmed, under the Rooker- Feldman doctrine, a federal district court's dismissal of Keene Corp.'s federal complaint, in which Keene Corp. had challenged the constitutionality of a state trial court's discovery order in a pending state trial. The court, noting that "[w]e agree with the decisions of other circuits holding that the Feldman doctrine applies to state court judgments that are not yet final," id. at 297 n. 3, explained that Keene Corp sought precisely what the Rooker- Feldman doctrine prohibits:
 
 
 47
 [w]here a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting her lawsuit as a section 1983 action, Feldman 's jurisdictional bar applies.
 
 
 48
 Id. at 297. The court thus applied the Rooker- Feldman doctrine in a context quite similar to that which confronts us in the present case: the PBA and Trotter, like Keene Corp., desired federal district court review over the interlocutory order of a lower state court. Like the Eighth Circuit, we hold that the Rooker- Feldman doctrine precludes such review.
 
 
 49
 Other cases also demonstrate that the Rooker- Feldman doctrine applies to orders issued by lower state courts. In Worldwide Church of God v. McNair, 805 F.2d 888 (9th Cir.1986), the Worldwide Church of God ("Church") brought a federal action challenging the constitutionality of a state court jury verdict against them for defamation. The Church contended that its allegedly defamatory statements had been made in the context of an ecclesiastical debate and were therefore protected by the First Amendment. The federal district court dismissed the Church's federal complaint under Younger abstention, and the Church appealed.
 
 
 50
 On appeal, the Court of Appeals for the Ninth Circuit affirmed the district court's dismissal of the Church's complaint, but based its affirmance not on Younger abstention but rather on the Rooker- Feldman doctrine. The court explained that
 
 
 51
 [t]he United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings.... This doctrine applies even when the challenge to the state court decision involves federal constitutional issues.
 
 
 52
 Id. at 890-91. Noting its agreement with other circuits which had held "that the Feldman doctrine should apply to state judgments even though state court appeals are not final," id. at 893 n. 3, the court held that the Rooker- Feldman doctrine precluded the assertion of federal jurisdiction over the Church's complaint.
 
 
 53
 Similarly, in Hale v. Harney, 786 F.2d 688 (5th Cir.1986), the Fifth Circuit Court of Appeals held that the Rooker- Feldman doctrine precluded a federal district court from asserting jurisdiction over the complaint of a Dr. Ronal D. Hale, in which Dr. Hale sought to challenge a state court divorce decree which was also the subject of an appeal which was pending within the state court system. The court, citing Feldman, explained that:
 
 
 54
 [j]udicial errors committed in state courts are for correction in the state court systems, at the head of which stands the United States Supreme Court; such errors are no business of ours.... Insofar as these complaints about the state court or that court's decree are legally cognizable and do not represent mere grumbling, they are properly addressed to the state appellate courts, not to us. We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system.
 
 
 55
 Id. at 691 (emphasis added).
 
 
 56
 We agree with the above-cited cases that the Rooker- Feldman doctrine precludes federal review of lower state court decisions, just as it precludes review of the decisions of a state's highest court. The PBA and Trotter want the district court to sit in direct review of the New York state court's order granting a preliminary injunction to the Port Authority, and to thereby circumvent the state appellate courts and the United States Supreme Court. Even if Younger abstention were not available as a means for dismissing their complaint, dismissal would have been required because the district court's exercise of jurisdiction over their complaint would have necessitated a review of the state court's holding. The Rooker- Feldman doctrine forbids such review.
 
 
 57
 In addition, we note that the interlocutory nature of the New York state court's order does not preclude the application of the Rooker- Feldman doctrine in the instant case. As discussed above in the context of Younger abstention, the preliminary injunction issued by the New York trial court against the PBA and Trotter resolved, at least for the moment, the dispute between the parties which forms the basis of the federal complaint at issue in this case. Although we have held that the district court did not abuse its discretion under Younger in abstaining from hearing this matter, the district court could have alternatively declined to entertain the suit based on the fundamental principle of the Rooker- Feldman doctrine: that a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings.
 
 IV.
 
 58
 We will affirm the district court's order which dismissed the complaint of the PBA and Trotter. Costs shall be taxed against the PBA and Trotter.
 
 
 
 [1]
 Judge Hutchinson joins in the opinion of the Court with the exception of Part IIIC concerning application of the Rooker- Feldman doctrine to this case. Since the Court's result is fully supported by its incisive analysis of the Younger abstention doctrine, he believes the Rooker- Feldman discussion is unnecessary dictum that goes beyond the limits we have previously placed on Rooker-Feldman. See Valenti v. Mitchell 962 F.2d 288, 296-98 (3d Cir.1992) (citing cases). He would therefore eliminate any discussion of the Rooker- Feldman doctrine and would take no position on its applicability to this interlocutory order of a state trial court that has not yet been finally reviewed by the state's highest court
 
 
 [2]
 Even if the PBA and Trotter had not filed an appeal within the state court system, Younger abstention would nevertheless have been appropriate because the PBA and Trotter had the ability to file such an appeal. As the Supreme Court has explained,
 [A] necessary concomitant of Younger is that a party ... must exhaust his state appellate remedies before seeking relief in the district court, unless he can bring himself within one of the exceptions specified in Younger.
 Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).
 
 
 [3]
 Under the Rooker- Feldman doctrine, federal courts may not overturn state court decisions or evaluate claims that are "inextricably intertwined" with the state court's decision. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). See also Part IIC infra