**Richard PIEPER, Plaintiff–Appellant,**

v.

**AMERICAN ARBITRATION ASSOCIA-TION, INC.; R. Jeffrey Pollock; Gerald Hambly, Defendants–Appellees.**

No. 01–4043.

United States Court of Appeals,
Sixth Circuit.

Argued: Nov. 14, 2002.

Decided and Filed: July 11, 2003.

George R. Royer (argued and briefed), Toledo, Ohio, for Appellant.

John P. Gustafson (argued and briefed), Toledo, Ohio, for Appellees.

Before: MOORE and COLE, Circuit Judges; SARGUS, District Judge.*

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Richard Pieper ("Pieper") was ordered by an Ohio state court to arbitrate the disputes that arose between him and one of the defendants-appellees, Gerald Hambly. Before arbitration began, however, Pieper brought a lawsuit in the U.S. District Court for the Northern District of Ohio, claiming that the dispute was not properly subject to arbitration and seeking injunctive relief that would bar the defendant-appellee American Arbitration Association from proceeding with arbitration hearings.

The district judge granted the defendants' motion to dismiss, holding that the district court was without jurisdiction to grant the plaintiff relief under the *Rooker–*

*Feldman* doctrine, which generally prohibits federal courts from reviewing state-court judgments. For the reasons that follow, we **AFFIRM** that judgment.

## I.  BACKGROUND

On December 14, 1999, Pieper brought an action against Gerald Hambly and several other individuals in Ohio state court. Pieper, Hambly, and others had agreed to form a home-construction business. Pieper was supposed to have a one-third interest in the corporation, All Points Investment, Inc. However, according to the state-court complaint, the defendants improperly assumed control of the corporation in violation of Ohio law. The complaint also alleged that the defendants withdrew funds and assets from the corporation without approval of the board of directors and for their personal use, fraudulently purchased real estate, trespassed on the plaintiff's property, and eventually sold the corporation without a vote of the board of directors. The complaint did not raise any federal issue.

Hambly filed a motion to stay the state-court proceedings pending arbitration and to compel arbitration in January of 2000. The state trial court granted Hambly's motion on February 16, 2000. Pieper objected, and the state court again directed arbitration over Pieper's protest. At no point did Pieper appeal this determination to an Ohio appellate court, even though such an order is appealable under OHIO REV. CODE ANN. § 2711.02.

Hambly filed a complaint in arbitration, accusing Pieper of embezzlement, accounting negligence, fraud, and malpractice, among other claims. The arbitration hearing was originally scheduled for March of

---

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

2001, but was pushed back to April 19, 2001, by request of Pieper's counsel. The day before the arbitration was to begin, on April 18, 2001, Pieper filed this lawsuit in federal court, which sought a declaration that the disputes between Pieper and Hambly were not properly subject to arbitration. Hambly was not initially a defendant in the federal lawsuit; Pieper sued the American Arbitration Association and the arbitrator scheduled for the case. Hambly moved to intervene, and the motion was granted. Hambly then filed a motion to dismiss, alleging that the *Rooker–Feldman* doctrine prohibited federal-court jurisdiction, and he also moved for sanctions. The district court granted the motion to dismiss but denied the motion for sanctions.

Pieper has appealed to this court. Hambly has filed a motion for sanctions under Federal Rule of Appellate Procedure 38(a), alleging that Pieper has filed a frivolous appeal.

## II.  ANALYSIS

### A.  The *Rooker–Feldman* Question

■  The principal issue in this case is whether the district court properly dismissed the case because of a lack of subject-matter jurisdiction. This court reviews de novo a district court's grant of a motion to dismiss on the basis of subject-matter jurisdiction. *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir.2002), *cert. denied*, 537 U.S. 1118, 123 S.Ct. 887, 154 L.Ed.2d 797 (2003).

The *Rooker–Feldman* doctrine is derived from two Supreme Court cases which establish that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir.2002); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Court has summarized the doctrine as being designed to prevent " 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment [in the lower federal courts] based on the losing party's claim that the state judgment itself violates the loser's federal rights.' " *Tropf*, 289 F.3d at 936–37 (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)).

■  The *Rooker–Feldman* doctrine bars relitigation of claims raised in state-court proceedings as well as claims that are "inextricably intertwined" with the claims asserted there. *See Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir.1998). In practice this means that when granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction: " 'Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.' " *Id.* (citation omitted). The *Rooker–Feldman* doctrine, however, does not bar jurisdiction when the plaintiff's claim is merely "a general challenge to the constitutionality of the state law applied in the state action," rather than a challenge to the law's application in a particular state case. *Tropf*, 289 F.3d at 937 (quoting *Catz*, 142 F.3d at 293).

■  At first glance, it seems indisputable that the *Rooker–Feldman* doctrine applies here. Pieper has several federal claims; he alleges that the state court's order compelling arbitration violates his due process rights, his right to jury trial,

and his right to confront witnesses. All of these claims, however, are attacks on the state court's order compelling arbitration (though we note that none of them was actually raised in the state-court litigation). Since it would be impossible to grant Pieper relief on any of these claims without calling into question the state court's arbitration decision, Pieper's federal claims are inextricably intertwined within the meaning of *Rooker–Feldman*'s bar.[1] Having reached this conclusion, we would normally dismiss Pieper's case immediately.

This case, however, has a twist. Pieper implicitly argues that *Rooker–Feldman*'s bar should not apply here because the state-court order requiring arbitration was not reviewable by the Supreme Court under 28 U.S.C. § 1257, because it was not a final judgment or a decision by the highest court of a State. Such a claim has not been addressed by our circuit before. To understand this argument, one must start by looking at the text of 28 U.S.C. § 1257, which is the root of *Rooker–Feldman* doctrine and which reads, in part, as follows:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certio-

rari [when they raise a federal question]. . . .

On its face, this statute simply grants to the Supreme Court the ability to consider appeals from the highest court of each state. In the *Rooker* and *Feldman* cases, however, the Supreme Court drew an important negative inference from this statutory language. This negative inference is that because the Supreme Court was specifically given jurisdiction to hear appeals from final judgments of the highest state courts, lower federal courts do not have jurisdiction to review such judgments. *See Feldman*, 460 U.S. at 482, 103 S.Ct. 1303 (noting that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings" because "[r]eview of such judgments may be had only in this Court").

A close reading of § 1257 reveals that the first sentence gives the Supreme Court power to review only a certain subset of state-court decisions, namely *final judgments or decrees* that are *rendered by the highest court of a State in which a decision could be had*. In essence, Pieper argues that *Rooker–Feldman* does not apply to the state-court order compelling arbitration because it was not a final judgment and also was not rendered by the highest state court.[2] The basic argument

---

1. We note that Pieper's claim is that the state court's judgment actively caused him injury (not that the judgment merely failed to redress a preexisting injury). This suggests that, of the related doctrines of res judicata and *Rooker–Feldman*, it is the *Rooker–Feldman* doctrine that applies here. *See Hutcherson v. Lauderdale County, Tenn.*, 326 F.3d 747, 755 (6th Cir.2003).

2. It is clear that the state trial court's order granting a motion to stay state-court litigation and compel arbitration was not rendered by the highest court of the state in which a decision could be had. In fact, the state trial court's order was immediately appealable under Ohio Rev. Code Ann. § 2711.02. The fact

that Pieper chose not to appeal the order does not change that analysis.

It also appears that the order staying litigation and compelling arbitration was not a final judgment or decree within the meaning of § 1257. The Supreme Court has explained that "[t]o be reviewable by this Court, a state-court judgment must be final 'in two senses: it must be subject to no further review or correction in any other state tribunal; it must also be final as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein. It must be the final word of a final court.'" *Jefferson v. City of Tarrant, Ala.*, 522 U.S. 75, 81, 118 S.Ct. 481, 139 L.Ed.2d 433 (1997) (citation omitted). The state-court judgment here seems

under this view is that the *Rooker–Feldman* doctrine is only necessary to effectuate the negative implication of 28 U.S.C. § 1257—it is needed only to prevent lower federal courts from considering cases that the Supreme Court is permitted to hear under the statute. When the state-court judgment·is not final or is not rendered by the highest state court, Supreme Court review under § 1257 is impossible. This, according to the argument, makes *Rooker–Feldman* inapplicable.[3]

■ We reject this argument and join with the majority of. circuits that have concluded that the *Rooker–Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts.

First, like other federal courts of appeals, we find it difficult to believe that lower federal courts are prohibited from reviewing final state-court judgments, but yet are somehow permitted to review interlocutory decisions. The D.C. Circuit put this point forcefully:

> We cannot imagine how one could reconcile *Feldman*'s reasoning, based as it is on allowing state courts to arrive at decisions free from collateral federal attack, with the idea that the district court would be free to review Richardson's suspension so long as the decision was *interlocutory*.

*Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1515 (D.C.Cir. 1996) (italics in .original). This point has also been made by the numerous other circuits who have adopted this position. *See, e.g., Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir.2000) (stating that "[i]t cannot be the meaning of *Rooker–Feldman* that, while the inferior federal courts are barred from reviewing *final* decisions of state courts, they are free to review interlocutory orders") (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 138 (2d Cir.), *cert. denied*, 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997)); *see also Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir.1996); *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 178 (3d Cir.1992); *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1103 (9th Cir.2003); *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 474 (10th Cir.2002). *But see Cruz v. Melecio*, 204 F.3d 14, 21 n. 5 (1st Cir.2000) ("[D]enying jurisdiction based on a state

---

final in neither sense. It *is* reviewable in another state tribunal, and it does *not* determine the litigation. *See Owens Flooring Co. v. Hummel Constr. Co.*, 140 Ohio App.3d 825, 749 N.E.2d 782, 784 (2001) (explaining that although an order staying litigation pending arbitration is immediately appealable, it is not a final judgment under Ohio law). It therefore appears that the· state-court order was not final within the meaning of § 1257. Of course, our conclusion that the *Rooker–Feldman* doctrine applies equally to interlocutory orders as well as final judgments obviates any need conclusively to resolve this issue—for regardless of whether the order staying litigation pending arbitration is interlocutory or final, we hold that Pieper cannot relitigate it here.

**3.** Of course, § 1257 also only permits review of final state-court decisions that involve a

federal question. Since Pieper's state-court complaint did not raise a federal question— the constitutional issues were raised only in the federal lawsuit—Pieper could argue that the lack of federal questions in the state-court lawsuit is another reason why *Rooker–Feldman* is inapplicable here, because the lack of a federal issue provides another reason why the Supreme Court could never have reviewed the state-court case under § 1257.

The Supreme Court, however, has already rejected this argument, and so must we as well. *See Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 (explaining that "the fact that we may not have jurisdiction to review a final state court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims").

court judgment that is not eligible for review by the United States Supreme Court simply would not follow from the jurisdictional statute that invigorated the *Rooker–Feldman* doctrine in the first place."); *cf. Siegel v. Lepore,* 234 F.3d 1163, 1172 (11th Cir.2000).[4]

For similar reasons, we do not believe that lower federal courts should be prohibited from reviewing judgments of a state's highest court but should somehow have free rein to review the judgments of lower state courts. The Supreme Court has repeatedly used language suggesting that *Rooker–Feldman*'s bar applies to judgments of lower state courts as well as to those of a state's highest court. *See Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303 (explaining that " 'lower federal courts possess no power whatever to sit in direct review of state court decisions' ") (citing *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). Moreover, appellate courts that have considered the question have also generally rejected the argument, and have held that the *Rooker–Feldman* doctrine applies equally to orders of lower courts. *See Hill v. Town of Conway,* 193 F.3d 33, 40 (1st Cir.1999); *Port Auth.,* 973 F.2d at 178; *Jordahl v. Democratic Party of Virginia,* 122 F.3d 192, 199 (4th Cir.1997), *cert. denied,* 522 U.S. 1077, 118 S.Ct. 856, 139 L.Ed.2d 756 (1998); *Wilson,* 326 F.3d at 1103; *Kenmen,* 314 F.3d at 473. *But see FDIC v. Meyerland Co. (In Re Meyerland Co.),* 960 F.2d 512, 516 (5th Cir.1992), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993).

Ultimately, we conclude that this argument depends upon a faulty premise. It presumes that the *Rooker–Feldman* doctrine exists only to prevent lower federal courts from considering cases that the Supreme Court could hear under § 1257 and that the *Rooker–Feldman* doctrine does not apply when the underlying state-court judgment is not amenable to review in the Supreme Court. Under this view, the Supreme Court's lack of jurisdiction essentially "creates" jurisdiction for the lower federal courts. The Supreme Court's lack of jurisdiction, however, seems to us actually to be a stronger argument *against* lower federal-court jurisdiction than in favor of it. *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, 18B FEDERAL PRACTICE AND PROCEDURE § 4469.1,

---

4. Commentators have noted the split. *See* Jean R. Sternlight, *Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions Against State Courts,* 147 U. PA. L. REV. 91, 142 (1998) (noting that "it is not entirely clear whether the *Rooker–Feldman* doctrine applies only to final judgments, or also to interlocutory rulings"); 18 MOORE'S FEDERAL PRACTICE § 133.30[3][b], at 133–24 (3d ed.2000) (noting that "[s]ome circuits have held that the *Rooker–Feldman* doctrine, unlike preclusion, does not depend on the existence of a final state court judgment on the merits, but also applies to interlocutory decisions").

Moore's Federal Practice suggests that this circuit has implied that the *Rooker–Feldman* doctrine applies only to final judgments. *See* 18 MOORE'S FEDERAL PRACTICE § 133.30[3][b], at 133–24 n. 20 (3d ed.2000) (citing *United States v. Owens,* 54 F.3d 271, 274 (6th Cir. 1995)). It is true that *Owens* intimates, to some extent, that a final state-court judgment is required for the *Rooker–Feldman* doctrine to be applicable. *See Owens,* 54 F.3d at 274 (stating that "the doctrine may not bar a party against whom there is no state court judgment"). The *Owens* court, however, was not making a statement about the necessity of a final judgment—it was merely making the point that the *Rooker–Feldman* doctrine could not apply to parties that were not present in the state-court litigation. *See id.* ("Because the Postal Service was not a party in state court action in this case, the *Rooker–Feldman* doctrine does not apply."). The language in *Owens* arguably suggesting that a final judgment (rather than an interlocutory order) is necessary for *Rooker–Feldman* to apply was wholly inadvertent, and we do not consider it dispositive of the issue here.

at 146–47 (2d ed. 2002 & Supp.2003) ("Of course the prospect that there may never be Supreme Court jurisdiction may support the further conclusion that district court subject-matter jurisdiction is even less appropriate."); *cf. Doe & Assocs. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir.2001) ("[T]he *Rooker–Feldman* doctrine is not premised on the availability of Supreme Court review of the state court decision."). We believe that it is untenable that the Supreme Court's lack of jurisdiction over interlocutory appeals or appeals from lower state courts somehow opens up the possibility of review in the lower federal courts. As a matter of logic, such an inference is not warranted, as the statement that lower federal courts should not have jurisdiction where the Supreme Court has jurisdiction (the *Rooker–Feldman* doctrine) does not logically imply that lower federal courts *should always have* jurisdiction when the Supreme Court *does not.*[5]

Necessity also seems to compel the conclusion that the *Rooker–Feldman* doctrine applies here. The only federal circuit to have considered specifically the applicability of the *Rooker–Feldman* doctrine to an interlocutory order to stay litigation pending arbitration concluded that the doctrine applies to such orders. *See Brown & Root,* 211 F.3d at 199. To hold otherwise would allow potential relitigation of every state-court order staying litigation and compelling arbitration. This case is a perfect example of such a possibility. The state-court lawsuit between these parties did not involve any federal issue (nor were the parties diverse). After the state court stayed the state-court litigation and ordered arbitration, the dissatisfied party

(Pieper) filed this federal lawsuit, arguing that the state-court order requiring arbitration violated his due process rights and his constitutional right to a jury trial. If Pieper were permitted to circumvent the state court's order staying litigation and compelling arbitration, so could any party who is forced by a state court to arbitrate its disputes. Any party dissatisfied with a state court's order compelling arbitration and staying litigation could simply file a federal lawsuit, claiming that the state court's order itself violated his Fifth or Seventh Amendment rights.

Our conclusion that we lack jurisdiction in this case does disturb us, however, in one respect. Under Ohio law, interlocutory orders cannot form the basis for claims of res judicata or collateral estoppel. *See State ex rel. Comm. for the Referendum of City of Lorain Ordinance No. 77–01 v. Lorain Cty. Bd. of Elections,* 96 Ohio St.3d 308, 774 N.E.2d 239, 247 (2002) (noting that res judicata does not apply to an interlocutory order); *Butler Cty. Bd. of Comm'rs v. City of Hamilton,* 145 Ohio App.3d 454, 763 N.E.2d 618, 626 (2001) (noting that, for issue preclusion to apply, there must be a "final judgment on the merits in the previous case"). As a result, we must concede that we are barring federal-court jurisdiction here even though state courts in Ohio would not be bound by the state-court judgment here. *See* CHARLES ALAN WRIGHT ET AL., 18B FEDERAL PRACTICE AND PROCEDURE § 4469.1, at 147 (2d ed. 2002 & Supp.2003) (noting that "[i]t seems particularly questionable to bar federal-question jurisdiction if the courts of other states, and indeed other courts of the same state, would have jurisdiction to

---

**5.** In fact, a natural reading of 28 U.S.C. § 1257 suggests that no federal court (neither inferior nor Supreme) has jurisdiction over appeals from non-final state-court orders or from orders and decisions of lower state courts. Such a reading supports our conclusion that the *Rooker–Feldman* doctrine is appropriately applied to interlocutory orders and judgments of lower state courts.

entertain the same federal question"). Although this is somewhat disconcerting, we conclude that the balance of arguments discussed above favors application of the *Rooker–Feldman* doctrine here. We therefore affirm the district court's decision to dismiss this case for lack of subject-matter jurisdiction.

### B. Sanctions on Appeal

▇ Appellee Hambly has filed against Pieper a motion for sanctions for filing a frivolous appeal under Federal Rule of Appellate Procedure 38. "Rule 38 allows a court of appeals to award appellees 'just damages and single or double costs' in a frivolous appeal." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir.1997) (citation omitted). "Although the term 'frivolous' is not subject to a ready-made definition, generally '[a]n appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit.'" *Allinder v. Inter–City Prods. Corp. (USA)*, 152 F.3d 544, 552 (6th Cir. 1998) (citation omitted), *cert. denied*, 525 U.S. 1178, 119 S.Ct. 1115, 143 L.Ed.2d 110 (1999). Here, it cannot be said that Pieper's argument was wholly without merit or that the result in this case was foreordained. As was the case in *Barney*, "[t]he central issue was one of first impression" in this circuit. *Barney*, 110 F.3d at 1213. We had not previously decided the question, and although several courts have sided against Pieper on the matter, one federal appellate court has in fact adopted Pieper's position. *See Cruz*, 204 F.3d at 21 n. 5. This undercuts any argument that Pieper's appeal was frivolous.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED.** The defendant's motion for sanctions under Federal Rule of Appellate Procedure 38 is **DENIED.**