# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2619

_____

Parker Law Firm; Timothy Steven Parker, I,

*Plaintiffs - Appellants*,

v.

The Travelers Indemnity Company; PS Finance, LLC,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: September 23, 2020
Filed: January 12, 2021

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Parker Law Firm and Timothy Parker appeal the dismissal of their complaint against PS Finance, LLC, and The Travelers Indemnity Company. This case is part of an ongoing dispute about whether Parker and the Law Firm had a contractual obligation to provide PS Finance with certain payments that appellants received on behalf of a client.

PS Finance sued Parker and the Law Firm in New York state court after learning that appellants received the payments. The New York court ruled that the dispute was covered by an arbitration clause in an agreement between the parties, dismissed PS Finance's action for lack of jurisdiction, and directed the parties to seek redress in arbitration. Travelers, which had issued an insurance policy to appellants, declined to defend the claims brought by PS Finance on the ground that there was no possible basis for coverage under the policy.

Appellants then sued PS Finance and Travelers in Arkansas state court. The defendants removed the case to the federal district court, and each moved to dismiss the action. The district court[1] dismissed the complaint, ruling that it lacked jurisdiction over the claims against PS Finance, and that appellants failed to state a claim against Travelers. We affirm.

I.

This case arose from appellants' representation of Eureka Woodworks, Inc. In 2012, Eureka entered into a contract with PS Finance to provide Eureka with business funding. In exchange, Eureka agreed to assign to PS Finance certain proceeds that the company obtained from a claim against British Petroleum. The claim was for losses that Eureka suffered as a result of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico. Appellants represented Eureka in negotiating the contract with PS Finance and in pursuing claims before a claims facility established by British Petroleum.

The contract between Eureka and PS Finance provides that Eureka "shall repay [PS Finance] from the proceeds of the settlement, judgment and/or verdict in his/her

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

case." The agreement further states that PS Finance "is to be paid only if such proceeds are received through settlement, judgment or verdict."

The contract includes an arbitration clause as follows: "Any controversy or claim arising out of or relating to this contract" will be subject to "binding arbitration administered by the American Arbitration Association," and the arbitration will occur in "Richmond County, New York." Appellants acknowledged in the agreement that they must distribute any proceeds of Eureka's claims arising from the oil spill to PS Finance, after subtracting attorney's fees and costs. Appellants also agreed that any proceeds would not be paid to Eureka until Eureka's lien to PS Finance was satisfied.

Appellants, on behalf of Eureka, recovered two interim payments from the claims facility in April and May 2012. Appellants received two checks; they transferred one check and the proceeds of another to Eureka. Neither Eureka nor appellants transmitted any portion of these payments to PS Finance. Parker and the Law Firm maintain that the payments were "not money from a judgment, verdict or settlement" within the meaning of the contract, and that they thus had no obligation to transfer them to PS Finance.

PS Finance sued Eureka, Parker, and the Law Firm in New York state court, alleging that PS Finance was entitled to receive the interim payments. Parker and the Law Firm moved to dismiss the action, and PS Finance moved for summary judgment. In December 2017, the New York trial court concluded on its own initiative that the parties had agreed to arbitrate the dispute, dismissed the action for lack of jurisdiction, and directed the parties to seek redress in arbitration. Parker and the Law Firm moved to vacate and re-argue the order, but the court denied the motion. Parker and the Law Firm appealed that ruling, and the appeal is pending.

In January 2019, Parker and the Law Firm brought this action in Arkansas state court against Travelers and PS Finance. Appellants sought a declaratory judgment

that they owed no money to PS Finance. They also alleged that PS Finance had breached its contract with appellants and abused civil process by suing appellants in New York when no money was owed. After the case was removed to the district court, appellants moved to enjoin PS Finance from pursuing arbitration of the dispute under the contract between appellants and PS Finance. Against Travelers, appellants sought an order requiring the insurer to defend appellants against the claims by PS Finance and to pay any claims of PS Finance on which appellants are found liable.

The district court dismissed the claims against PS Finance based on the rule of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The court reasoned that there was "no way" for the court "to reach Plaintiffs' claims against [PS Finance] without finding that the New York Supreme Court was incorrect in ruling that the parties must arbitrate these matters." The court dismissed appellants' claims against Travelers on the ground that there was no coverage or duty to defend under the policy.

II.

Appellants first maintain that the district court erred by dismissing the claims against PS Finance based on the *Rooker-Feldman* doctrine. *Rooker* and *Feldman* established that the inferior federal courts generally lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Appellants' action against PS Finance founders on that rule. Appellants may not be traditional "state-court losers," because they did not initially bring the New York action that was dismissed, and the New York court did not rule on the merits of their dispute with PS Finance. But appellants later challenged the state court's

decision directing the parties to arbitration, and they now claim to have been aggrieved by an adverse decision on that challenge. That PS Finance did not win the relief that it sought does not make *Rooker-Feldman* inapplicable. Appellants were state-court losers insofar as they sought to have the contractual dispute between the parties resolved in court rather than in arbitration.

In this case, Parker and the Law Firm sought a declaratory judgment that PS Finance's claims in New York have no merit, and they claim that PS Finance wrongfully pursued its claims in New York because appellants owed nothing to PS Finance. Then, to "protect and guard against impermissible efforts by [PS Finance] to compel arbitration," they moved for an order enjoining PS Finance from pursuing arbitration of these claims in New York.

Appellants' claims in this action effectively seek to appeal the New York court's order compelling arbitration. Appellants brought these claims in Arkansas after the New York court already ruled that whether appellants owe money to PS Finance is a matter subject to arbitration. By proceeding with the claims in the district court, appellants necessarily asked the federal court to review and reject the New York court's ruling that claims concerning amounts owed under the contract must be resolved in arbitration. The claims against PS Finance are thus barred by the rule of *Rooker* and *Feldman*. *See Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 460-61 (6th Cir. 2003); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 202 (4th Cir. 2000).

Appellants maintain that *Rooker-Feldman* does not apply because the New York court's orders are not final judgments on the merits. Parker and the Law Firm did not appeal the order directing the parties to arbitrate, but they did move to vacate the order and reargue the motion, and then appealed the trial court's denial of that motion. Even so, that an appeal is pending in the New York state courts does not mean that a federal district court has jurisdiction to consider a parallel appeal. This

court, like other circuits, has concluded that *Rooker-Feldman* applies to state court judgments that are not yet final. *Keene Corp. v. Cass*, 908 F.2d 293, 297 n.2 (8th Cir. 1990); *see Pieper*, 336 F.3d at 461-63. Nor does the fact that the New York court directed the parties to arbitrate without reaching the merits of the dispute mean that a federal court is empowered to consider an appeal of the New York order. *Rooker-Feldman* provides that jurisdiction to review state court decisions rests with superior state courts and the Supreme Court of the United States, not with federal district courts. While the more common application of *Rooker-Feldman* involves a state court adjudication on the merits, the logic underlying the rule applies equally to a state court order directing arbitration. "To hold otherwise would allow potential relitigation of every state-court order staying litigation and compelling arbitration." *Pieper*, 336 F.3d at 464.

Appellants also assert that the district court may entertain this action because the New York state court said that it lacked jurisdiction over the contract dispute between appellants and PS Finance. They suggest that the federal district court has authority to declare the state court's decision void *ab initio* for lack of jurisdiction. *See Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 299 (6th Cir. 2005). The New York court, however, did not lack jurisdiction to decide *whether* the contract dispute was subject to arbitration. That is a matter for judicial determination, *Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884, 887 (N.Y. 1997), and appellants' attempt to appeal the New York court's decision on arbitrability to a federal district court is barred by *Rooker-Feldman*.

For these reasons, we affirm the district court's decision dismissing the claims against PS Finance.

III.

Appellants also challenge the district court's order dismissing their claims against Travelers for breach of contract. To survive a motion to dismiss, a plaintiff must plead "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Arkansas law governs interpretation of the insurance policy. Under Arkansas law, "language in an insurance policy is to be construed in its plain, ordinary, and popular sense." *Phila. Indem. Ins. Co. v. Austin*, 383 S.W.3d 815, 819 (Ark. 2011). "[I]f the language is ambiguous, this court will construe the policy liberally in favor of the insured and strictly against the insurer." *Id.* at 820.

The policy that Travelers issued to appellants includes two types of coverage that are at issue here: business personal property coverage and commercial general liability coverage. Appellants maintain that because PS Finance alleged in New York that Parker and the Law Firm improperly transferred to Eureka certain interim payments from the claims facility, the Travelers policy covers a loss that allegedly occurred when appellants transferred the payments to Eureka. Travelers disagrees and contends that appellants have not alleged any possible basis for coverage or a duty to defend.

The business property provision states that Travelers "will pay for direct physical loss of or damage to Covered Property." Covered Property is defined as "Business Personal Property located in or on the buildings described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises," including "[p]roperty of others that is in your care, custody or control." Business personal property includes "[m]oney." The district court ruled that appellants failed to state a claim because the complaint did not allege that there was

-7-

a direct physical loss or damage to money that was located in or on the relevant buildings or near the described premises.

Appellants' theory is that if PS Finance prevailed in its lawsuit in New York, then it would establish that the Law Firm "lost" money that was located on the Law Firm's property when the firm transferred the interim payments to Eureka. We conclude, however, that appellants' transfer of funds and a check to Eureka is not a "direct physical loss" of money within the meaning of the policy. Appellants rely on dictionary definitions for the ordinary meaning of "loss," but their own definition contemplates a situation in which property "cannot be located by an ordinary, diligent search." *Black's Law Dictionary* 1471 (11th ed. 2019) ("lost property"). Appellants allege that they know where the money is located—they transferred it to Eureka. This is not a case of "direct physical loss" where, say, money was stolen or dispersed to the wind by a tornado.

Alternatively, if appellants were correct that their transfer of a check and funds to Eureka amounted to a "direct physical loss" occasioned by their negligence, then an exclusion to coverage would apply. The policy provides that Travelers will not pay for loss or damage resulting from "[v]oluntary parting with any property by you or anyone else to whom you have entrusted the property." According to the complaint, appellants purposefully transferred to Eureka proceeds of a first interim payment and a check representing a second payment. Appellants contend that the parting with money was not "voluntary," however, because the payments belonged to Eureka, and the lawyer and law firm had no choice under the law and rules of professional conduct but to send them along to Eureka. But appellants' theory of "direct physical loss" is premised on the notion that Parker and the Law Firm negligently transferred the funds to Eureka, as alleged by PS Finance. If there were direct physical loss of money on that theory, then the parting would have been voluntary (though negligent) and not compelled by law or ethics, so the exclusion

-8-

would apply. For these reasons, Travelers properly declined to afford business personal property coverage under the policy.

Appellants also rely on the commercial general liability coverage under the Travelers policy. That section provides that Travelers will defend against any lawsuit that seeks damages based on "property damage" caused by an "occurrence." As applicable here, "property damage" includes "loss of use of tangible property that is not physically injured." An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The district court ruled that appellants failed to plead an "occurrence" that would trigger coverage or a duty to defend.

Appellants assert that their transfer of funds to Eureka amounts to a loss of use of tangible property and thus "property damage." They acknowledge that they intentionally transferred the disputed payments to Eureka, but maintain that the unintended consequences of their intentional acts amount to an "occurrence" that caused the damage.

Assuming for the sake of analysis that the transfer of funds to Eureka constitutes "property damage," we conclude that the complaint does not allege an "occurrence" within the meaning of the policy. There was no "accident." An "accident" is "an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *Cont'l Ins. Co v. Hodges*, 534 S.W.2d 764, 765 (Ark. 1976) (quoting 44 Am. Jur. 2d *Insurance* § 1219 (1969)). Parker and the Law Firm intentionally transferred the payments to Eureka; the event was entirely expected.

Appellants maintain that if they negligently gave the money to the wrong party (Eureka rather than PS Finance), then their intentional act still resulted in an "accident." But the authorities on which they rely involve unforeseeable

consequences of intentional conduct, such as the accidental striking of hidden persons with a shotgun blast aimed at windows, *see Talley v. MFA Mut. Ins. Co.*, 620 S.W.2d 260, 261-63 (Ark. 1981), or unforeseeable consequences of faulty workmanship, such as millions of dollars in collateral damage caused by the collapse of a silo after faulty welding on the silo by a subcontractor. *Lexicon, Inc. v. ACE Am. Ins. Co.*, 634 F.3d 423, 427 (8th Cir. 2011).

The situation here is not comparable. Appellants intentionally transferred the interim payments to Eureka. Eureka received the funds; there was no unforeseeable diversion. It was reasonably foreseeable to appellants that they would be liable to PS Finance if the finance company was entitled to the money under the governing contract. We therefore conclude that Travelers had no duty to defend appellants under the commercial general liability portion of the policy.

\*       \*       \*

The judgment of the district court is affirmed. PS Finance's motion to supplement the record and appellants' amended motion to supplement the record are granted. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

_____