GENTLEMEN'S RETREAT,
INC., Plaintiff,

v.

CITY OF PHILADELPHIA,
et al., Defendants.

No. CIV.A. 00–1882.

United States District Court,
E.D. Pennsylvania.

Aug. 10, 2000.

Joseph A. Diorio, Joseph A. Diorio, P.C., Philadelphia, PA, for plaintiff.

Cheryl L. Gaston, City Solicitor's Office, Philadelphia, PA, for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Presently before the court is a motion to dismiss plaintiff's complaint, which was filed by defendants City of Philadelphia, City of Philadelphia Department of Licenses and Inspections, Edward McLaughlin, and Dominic J. Verdi (collectively "defendants"). Also before the court is plaintiff Gentlemen's Retreat, Inc.'s motion for a preliminary injunction. For the reasons that follow, the court will grant defendants' motion to dismiss plaintiff's complaint and deny as moot plaintiff's motion for injunctive relief.

1. In its memorandum of law in support of its motion for a temporary restraining order and for permanent injunction, plaintiff further describes itself as "provid[ing] facilities for subcontractors to perform therapeutic massages for customers as well as other expressive ac-

## I. BACKGROUND

Plaintiff Gentlemen's Retreat, Inc. is a "fitness center" located at 1816–18 Ludlow Street, Philadelphia, which provides "entertainment and other expressive activities." *See* Compl. ¶ 9; Pl.'s Mem. of Law at 1.[1] On March 1, 2000, two women were arrested at plaintiff's Ludlow Street premises for prostitution. That same day, defendants posted a Cease Operations Order shutting down plaintiff's business on those premises pursuant to Sections 19–2601 and 19–2602 of the City of Philadelphia Code (the "Code"). The basis for the issuance of the Cease Operations Order was that plaintiff had created a public nuisance by engaging in, permitting, promoting acts of prostitution, for operating without a Business Privilege License ("BPL") and for operating a massage parlor without a zoning/use registration permit. *See* Def.'s Mot. to Dismiss, Ex. D.

Although Section 19–2602(5) of the Code states that any person who has been denied a license or whose license has been revoked shall have the right to appeal to the Board of License and Inspection Review ("Board of Review") within ten (10) days after receipt of the notice of revocation, plaintiff, for reasons unknown, elected not to appeal the revocation to the Board of Review.[2] Rather, plaintiff brought the instant action claiming that Code sections 19–2601 and 19–2602 are not only facially unconstitutional but also unconstitutional as applied to it because the statutory provisions deprive it of its due process rights.

Specifically, plaintiff claims that it had no pre-deprivation hearing prior to the cessation of its operations, no notice of any illegal conduct, and no meaningful post-deprivation hearing. Plaintiff also claims that these sections of the Code violate the Pennsylvania Constitution. Plaintiff next

tivity such as adult conversation." *See* doc. # 2, Mem. of Law at 1.

2. The Cease Operations Order itself also advised plaintiff of its right to appeal.

claims that defendants' action in shutting it down constitutes a prior restraint on plaintiff's freedom of expression in violation of the First Amendment. Finally, plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against defendants alleging violations of his Fourteenth and Eighth Amendment rights.

Defendants move to dismiss plaintiffs' complaint on three alternative grounds. First, defendants state that this court lacks subject matter over the matter based on the teachings of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (the *Rooker–Feldman* doctrine). Second, defendants contend that plaintiff has failed to state a claim upon which relief can be granted. Third, defendants argue that the court should abstain from hearing this matter pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## II. DISCUSSION

### A. The Rooker–Feldman Doctrine

 "The federal courts are under an independent obligation to examine their own jurisdiction ...." *See United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Thus, the court must first address defendants' argument that the *Rooker–Feldman* doctrine strips the court of its power to hear this case. *See Avellino v. Herron*, 991 F.Supp. 722, 725 (E.D.Pa.1997) ("Because federal courts are courts of limited jurisdiction, when the defendants raise the issue of whether *Rooker–Feldman* divests the court of subject matter jurisdiction, the court must

satisfy itself that it has the power to hear the case.") (citing *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 491 (3d Cir.1997)).

Considering defendants' motion to be a facial attack upon the allegations in the pleadings, the court must apply the standard for dismissals under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Pinewood Estates of Michigan v. Barnegat Twp. Leveling Bd.*, 898 F.2d 347, 349 n. 4 (3d Cir.1990) (concluding that it was "undoubtedly the correct approach" for the district court to treat the defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as a motion to dismiss under Rule 12(b)(6) and citing the "no set of facts" standard), *abrogated by on other grounds, Yee v. City of Escondido*, 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). Thus, the court must "accept as true the facts alleged in the [amended] complaint and reasonable inferences drawn from them. Dismissal ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).[3]

 "Under the *Rooker–Feldman* doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with such a state adjudication." *Gulla v. North Strabane Township*, 146 F.3d 168, 171 (3d Cir.1998). The doctrine is based on Congress' determination that lower federal courts may not directly review the decisions of a state court. *Id.; see also* 28 U.S.C. § 1257. "District courts lack subject matter jurisdiction once a state court

---

**3.** The defendants may bring a 12(b)(1) motion that attacks the existence of subject matter jurisdiction in fact, apart from any pleadings, "at any stage of the proceedings from the time the answer has been served until after the trial has been completed." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir.1977). Because no answer has yet been filed by the defendants in this case, any factual attack on the court's subject matter jurisdiction pursuant to Rule 12(b)(1) is premature. However, even if the court were to treat the defendants' 12(b)(1) motion at this stage of the proceedings as a factual attack on the court's subject matter jurisdiction, the motion would still be denied based upon this record.

has adjudicated an issue because Congress has conferred only original jurisdiction not appellate jurisdiction on the district courts." *Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d Cir.1993).

■ As the Third Circuit has noted, although the rule barring review of state decisions by lower federal courts "is easily stated, the test for determining whether a particular litigant seeks such direct review is more complex." *Gulla,* 146 F.3d at 171. A federal proceeding is barred under *Rooker–Feldman* "when entertaining the federal court claim would be the equivalent of an appellate review of [the state court] order." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). To put it another way, "*Rooker–Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *Id.*

■ The *Rooker–Feldman* doctrine applies to "the final adjudications of a state's highest court." *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. The Third Circuit has interpreted the doctrine to encompass final decisions of lower state courts as well. *Port Auth. Police Benevolent Ass'n v. Port Auth. of New York & New Jersey,* 973 F.2d 169, 178 (3d Cir. 1992). However, *Rooker–Feldman* does not apply where the state court did not reach the merits of a claim. *See Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir. 1994) (noting that court of common pleas dismissed claim without addressing merits and thus "district court was not faced with a situation where it was asked to review a determination of the state court"); *Schaffren v. Philadelphia Corp. for Aging,* No. Civ.A. 92–5858, 1997 WL 701313, at *6–8 (E.D.Pa. Nov.7, 1997) (no abstention under Rooker–Feldman because award of damages in federal civil rights action would not interfere with state court competency determination).

Here, there has been no decision by the state courts with respect to the propriety of the Cease Operations Order issued against plaintiff. Consequently, no ruling by this court would disturb a prior state court ruling. *See Marks,* 19 F.3d at 885 n. 11. Accordingly, *Rooker–Feldman* is not applicable to the instant case.

### B. *Younger Abstention*

■ As stated above, defendants also contend that this court should abstain from deciding the instant action pursuant to *Younger v. Harris.* In *Younger,* the Supreme Court refused to grant an injunction to a plaintiff who was being prosecuted under a state criminal statute. The Court's ruling was informed by notions of comity and federalism, i.e., the idea that the federal government, "anxious though it may be to vindicate and protect federal rights and federal interests, [must] always endeavor[ ] to do so in ways that will not unduly interfere with the legitimate activities of the [s]tates." 401 U.S. at 44–45, 91 S.Ct. 746. Subsequent courts have interpreted and expanded upon the Supreme Court's decision in *Younger* and have established a three-prong test to determine whether a federal court should abstain from hearing a case: (1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings must implicate important state interests, and (3) the plaintiff must be afforded an adequate opportunity in the state proceedings to raise constitutional claims. *See Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116, (1982); *FOCUS,* 75 F.3d at 843. All three prongs are met in the instant case.

First, although there is no ongoing action at the present time in any state or administrative court, defendants have established that there are "pending" judicial proceedings, to which plaintiff was a party

and with which this proceeding would interfere.[4] Plaintiff's claim is considered pending for the purposes of abstention despite plaintiff's failure to seek administrative or judicial review of defendants' administrative decision to issue the Cease Operations Order. *See, e.g., O'Neill v. City of Philadelphia*, 32 F.3d 785, 790 (3d Cir.1994); *Port Authority*, 973 F.2d at 173 n. 2 (finding that even if plaintiffs "had not filed an appeal within the state court system, *Younger* abstention would nevertheless have been appropriate because [plaintiffs] had the ability to file such an appeal").

In *O'Neill*, the Third Circuit was faced with the following question: "[W]hether a state proceeding is 'pending' and Younger abstention proper, where the adjudicatory process has become final as a result of the federal claimant's failure to pursue state-court judicial review of an unfavorable state administrative determination?" *Id.* There, the plaintiffs were issued parking tickets, but neither plaintiff paid fines, neither plaintiff answered the notices sent to them explaining that they could appear before the traffic court to contest their outstanding tickets, and neither plaintiff timely responded to orders of default which were entered as a result of plaintiffs'

failure to appear. *Id.* at 786–88. Based on those circumstances, the court found that it "had been given no reason why a litigant in a state administrative proceeding should be permitted to forego state-court judicial review of the agency's decision in order to apply for relief in federal court." *Id.* at 790.

Likewise, plaintiff here has offered no legitimate reason why it failed to seek appellate review of the issuance of the Cease Operations Order. Plaintiff had the right to judicial review of defendants' administrative decision under Pennsylvania state law, *see* 2 Pa. Con.Stat.Ann. § 752 ("Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)"), but has neither secured nor attempted to secure such a review.[5] Thus, the court finds the first prong of *Younger* satisfied.

Second, the subject matter of this action, the enforcement of regulations concerning the issuance and revocation of BPLs, involves interests traditionally of significance to the state. *See Golden Rule Ins. Co. v. Insurance Dep't*, 163 Pa.

4. The City of Philadelphia's administrative appeal process would be a judicial proceeding. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir.1991).

5. The court recognizes the validity of plaintiff's argument that "a person with a federal Civil Rights Act claim has no duty to exhaust state remedies before pursuing his or her claim in the federal courts." *See Marks*, 19 F.3d at 873 (citing *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172, (1982)); *Monaghan v. Deakins*, 798 F.2d 632, 638 (3d Cir.1986) (stating "in no case has the Supreme Court or this court ever turned the propriety of *Younger* abstention upon the mere availability of a state judicial proceeding"), *aff'd in part, vacated in part on other grounds*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). However, as in *O'Neill*, the court finds that the administrative action by defendants in posting the Cease Operations Order was a coercive action brought by defen-

dants to enforce a violation of the regulations imposed on businesses in the City of Philadelphia and not a remedial action brought by plaintiff to vindicate a wrong inflicted by the state. Under these circumstances, regardless of whether the cause of action is styled a "civil rights action" or an action pursuant to § 1983, *Younger* bars the determination of this matter in the federal court to circumvent the state court procedures. *See O'Neill*, 32 F.3d at 791 n. 13; *see also Musko v. McClandless*, No. CIV.A. 94–3938, 1995 WL 262520, at *4 (E.D.Pa. May 1, 1995) (stating that because plaintiff did not seek state-court judicial review of zoning authority's citations and its decisions to board up his home, which were "coercive" administrative proceedings, plaintiff's failure to seek state-court judicial review of those actions before bringing a federal court action based upon the zoning authority's conduct renders state court proceedings in this case "pending" for purposes of Younger).

Cmwlth. 509, 641 A.2d 1255, 1260 (1994) ("The Commonwealth's interest is in protecting its citizens from the conduct of business by those engaging in it irresponsibly or fraudulently."); *see, e.g., O'Neill,* 32 F.3d at 792 (finding that the "City of Philadelphia has a vital and critical interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular"). In fact, plaintiff does not contest that state interests, as opposed to federal interests, are implicated in the instant case. Thus, the court concludes that the second prong of *Younger* is also met.

■ Third, plaintiff must have been offered an adequate opportunity to raise its constitutional claims in the state proceedings. *FOCUS,* 75 F.3d at 843. At oral argument, plaintiff argued that the Board of Review would not hear its constitutional arguments. *See* Tr. 6/19/00 at 22. This prong is satisfied, however, even if the constitutional claims could not be raised in an administrative proceeding but could be raised in a state-court review of that administrative proceeding. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) ("In any event, it is sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding."); *see also Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 495, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (citing *Dayton* for proposition that "even if complainants could not raise their First Amendment

objections in the administrative hearing, it sufficed that objections could be aired in state court judicial review of any administrative decision") (concurring opinion).

■ Under Pennsylvania law, a plaintiff may raise constitutional claims during the judicial review of an administrative decision. *See Newcomer v. Civil Service Comm'n of Fairchance Borough,* 100 Pa. Cmwlth. 559, 515 A.2d 108, 110 (1986) (stating that constitutional challenge need not be raised at administrative level, but must be raised before trial court or waived); *City of Philadelphia Tax Review Bd. v. Headley,* 137 Pa.Cmwlth. 320, 585 A.2d 1170, 1172 (1991) (finding scope of review of local agency decision to be such that court "must affirm the adjudication of the local agency unless [it finds] that constitutional rights have been violated, errors of law have been committed, or findings of fact necessary to support the adjudication are not supported by substantial evidence") (citing *Wilson v. City of Philadelphia, Board of License & Inspection Review,* 16 Pa.Cmwlth. 586, 329 A.2d 908, 910 (1974)); *see also* 2 Pa. Cons. Stat.Ann. § 753.[6] Accordingly, the third prong of *Younger* is met.

## III. CONCLUSION

Having found that the instant matter satisfies all three requirements of the *Younger* abstention doctrine, this court respectfully abstains from deciding this matter. As a result, plaintiff's request for injunctive relief is moot.[7]

An appropriate Order follows.

---

6. Section 753 provides in pertinent part:
 A party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.
 2 Pa. Cons.Stat.Ann. § 753.

7. Moreover, the court need not address defendants' third argument that plaintiff fails to state a claim upon which relief can be granted.

*ORDER*

**AND NOW,** this **10th** day of **August, 2000,** it is hereby **ORDERED** that defendants' motion to dismiss (doc. # 9) is **GRANTED.** It is further **ORDERED** that plaintiff's motion for a preliminary injunction (doc. # 5) is **DENIED** as **MOOT.**

**AND IT IS SO ORDERED.**