Anthony J. MCKNIGHT, Plaintiff,

v.

Mary Lou BAKER, et al., Defendants.

No. Civ.A. 03–952.

United States District Court,
E.D. Pennsylvania.

Nov. 4, 2004.

Anthony J. McKnight, Chester, PA, pro se.

Lynne A. Sitarski, City of Philadelphia Law Dept., Deputy City Solicitor, Christopher Eric Ballod and Joseph G. Sauder, White and Williams LLP, Joni Berner, Berner & Klaw, Jane Leslie Dalton, Duane Morris LLP, Miles H. Shore, School District of Philadelphia, Office of General Counsel, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. BACKGROUND

This case arises out of a bitter custody dispute between the plaintiff-father Anthony McKnight ("McKnight") and the defendant-mother Dawn Middleton ("Middleton") concerning custody and visitation rights of their daughter, Elena Ali McKnight. The issues of custody and visitation have been litigated in state court. Based upon a temporary agreement reached between Middleton and McKnight, a custody order was entered on February 2, 2000. The custody order granted Middleton primary physical custody of the child.[1] That custody order was modified by the state court's order of October 6, 2000, holding McKnight in contempt of court for failing to undergo drug testing as ordered by the court on May 25, 2000 and suspending McKnight's visitation rights.

In response, McKnight filed this suit *pro se* in federal court.[2] Through a complaint and an amended complaint, McKnight has sued Middleton, Margaret Klaw (Middleton's attorney), Berner & Klaw (Klaw's law firm), Family Court Officials Mary Lou Baker and Mark Alleva,[3] the City of Philadelphia, Parent Infant Center (PIC) (the childcare facility his daughter attended), and Marnie Sweet (the director of PIC) for violations of his constitutional rights under 42 U.S.C. § 1983.

McKnight's claims center on the state court's handling of the custody proceedings involving his daughter. According to his sweeping allegations, all defendants have "embarked upon a systematic and continuous pattern of behavior that has

---

1. McKnight acknowledges this fact but contends that the February 4, 2000 custody order expired "long ago." Pl.'s Am. Compl. ¶ 96, 104. However, despite the fact that the order was termed a "Temporary Agreed Order of Custody," there is no indication that the order is no longer in force. Although the order specifies that the custody matter was to be revisited in 90 days, this does not appear to be an "expiration date" for the order, since the custody order was in full force in October of 2000 (7 months after its issue), when Judge Matthews suspended McKnight's visitation rights under the February 4, 2000 order. For that reason, McKnight's allegations that no custody order is in effect at this time is directly contradicted by the Family Court docket.

2. McKnight is a lawyer proceeding *pro se.* Although McKnight is a lawyer, he is currently suspended from the practice of law and is incarcerated for possession of drugs with intent to deliver, criminal conspiracy, and unlawful use of a communications facility. Def. City of Phila.'s Mot. for Summ. J., Ex. C (Dep. of Anthony McKnight, at 10, 29).

3. Mary Lou Baker is the Director of Operations and Case Processing for the Family Court. Mark Alleva is the Clerk of the Family Court.

resulted in the *de facto* termination of McKnight's natural, fundamental, and constitutionally protected parental rights." Pl.'s Am. Compl. at 3. The alleged pattern of infringing upon McKnight's rights ranges from January 17, 2000, the date Middleton filed a petition with the Family Court for sole custody of Elena, to the present day. Specifically, McKnight contends the Family Court's October 6, 2001 order suspending his rights to supervised visitation with Elena is part of the alleged pattern. In addition, the alleged pattern culminated shortly after September 27, 2002, when, according to McKnight, he mailed his ex parte petition for visitation with Elena to the Family Court, and the Family Court failed to process it.

Because of these purported infringements on McKnight's parental rights, he raises a myriad of legal claims to support his overarching allegation that defendants are part of a conspiracy to further a "neo-lesbian/feminist ideology" against him.[4] His core legal claims allege that the defendants have (1) conspired to deny him access to state Family Court, (2) conspired to interfere with his parental rights, (3) discriminated against him because he is African–American and male, and (4) retaliated against him for asserting his constitutional rights. As alluded to above, these claims arise from two separate sets of circumstances: One, the litigation leading up to and including the Family Court decisions to award custody of Elena to Middleton and to suspend McKnight's visitation rights, and two, the alleged filing of McKnight's petition for visitation rights and the alleged failure of the Family Court to process that petition. To remedy the alleged constitutional violations arising from these two sets of circumstances, McKnight seeks declaratory, injunctive and pecuniary relief.

A review of the McKnight's prolix complaint (and amended complaint) and the defendants' responses, including three motions for summary judgment, makes clear that the threshold issue in the case is whether the Court has jurisdiction to hear McKnight's claims for relief under the well-known *Rooker–Feldman* doctrine. Thus, in order to ensure that McKnight was on notice and had every opportunity to address the issue, the Court specifically issued upon McKnight a Rule to Show Cause why all claims against all parties should not be dismissed for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine. McKnight has responded by submitting an extensive brief concerning the applicability of the *Rooker–Feldman* doctrine to this case. The issue is thus ready for disposition. Also ready for disposition are the defendants' three separate motions for summary judgment.[5]

---

**4.** *See, e.g.*, Pl.'s Am. Compl. ¶ 70, in which McKnight alleges Middleton and the law firm that represents her had a strategy "commonly employed by neo-feminist and lesbian organizations against men" to deprive him of his constitutionally protected parental rights. Paragraph 89 further alleges, "Middleton is abusing Elena by exposing Elena to pheromones secreted by Middleton's former (and current) lesbian and other nonpaternal lovers, which will have a long-term ruinous impact on Elena's emotional and psychological development, including, but not limited to, causing the onset of early puberty."

**5.** Defendants the City of Philadelphia, Mark Alleva, and Mary Lou Baker contend in their motion that plaintiff's claims against them should be dismissed under the *Rooker–Feldman* doctrine and that the absence of a genuine issue of material fact entitles them to judgment as a matter of law. Defendants Dawn Middleton, Margaret Klaw, and Berner & Klaw contend in their motion they are entitled to summary judgment because plaintiff has failed to demonstrate they were "acting under color of state law" during their alleged violations of plaintiff's rights. Finally, Defendants Marni Sweet and Parent Infant Center argue in their motion that plaintiff's

## II. DISCUSSION

### A. *Applicable Law*

█ Under the *Rooker–Feldman* doctrine, lower federal courts may not exercise jurisdiction over claims that were "actually litigated" in state court or are " 'inextricably intertwined with the state adjudication,' meaning that 'federal relief can only be predicated upon a conviction that the state court was wrong.' " *Walker v. Horn*, 385 F.3d 321 (3d Cir.2004) (quoting *Desi's Pizza, Inc. v. City of Wilkes–Barre*, 321 F.3d 411, 419 (3d Cir. 2003)); *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 491 (3d Cir.1997). The doctrine has been applied to decisions of lower courts as well as decisions by the highest state court. *See Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 178 (3d Cir.1992) ("[T]he *Rooker–Feldman* doctrine applies to orders issued by lower state courts.").[6]

Because McKnight did not actually litigate the instant claims before the Family Court, the Court will address whether the instant claims are inextricably intertwined with the Family Court adjudication. Under the *Rooker–Feldman* doctrine, claims

are inextricably intertwined " 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, *Rooker–Feldman* precludes a federal action if the relief requested would effectively reverse the state decision or void its ruling.' " *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995)). Furthermore, the doctrine applies only "when entertaining the federal court claim would be the equivalent of an appellate review of [the state court] order ..., [and only] when in order to grant the federal plaintiff the relief sought, the federal court must take action that would render that judgment ineffectual." *Id.* (citing *Marks v. Stinson*, 19 F.3d 873, 886 n. 11 (3d Cir. 1994)).

### B. *Plaintiff's claims relating to the custody orders*

█ In this case, the Court cannot entertain McKnight's claims to the extent he seeks relief that would void or render ineffectual the Family Court custody orders governing McKnight's visitation rights. To grant McKnight the relief he requests

---

claims against them must fail as a matter of law because they, too, were not "acting under color of state law" during their alleged violations of plaintiff's rights. McKnight has several outstanding discovery requests in relation to these motions.

The motions will be disposed of as follows. First, the defendants' motions will be granted as to all claims against all defendants implicating the litigation leading up to and including the Family Court's custody orders. Second, to the extent that the motions address McKnight's claims as they pertain to the Family Court's alleged failure to process his petition for visitation, the motions will be denied without prejudice. Finally, McKnight's discovery motions will be denied as moot, given the disposition of his claims in this Memorandum and the accompanying Order.

**6.** McKnight also argues that the October 6, 2000 order was not a final adjudication on the merits because that order merely held him in contempt for failing to complete required drug testing. The facts are contrary to this argument. The October 6, 2000 order not only placed McKnight in contempt but also suspended his visitation rights. The order was a final adjudication on the merits because it suspended McKnight's visitation rights, and in so doing, applied the "best interest of the child standard," as Pennsylvania law required it to do. In any event, the *Rooker–Feldman* doctrine "applies [even] to state court judgments that are not yet final." *Port Auth. Police Benevolent Ass'n*, 973 F.2d at 178 (quoting *Keene Corp. v. Cass*, 908 F.2d 293 (8th Cir.1990)).

would require this Court to address the visitation issues already litigated in state court and resolved by the two orders issued by the Family Court. A favorable ruling for McKnight would result in the reinstatement of his visitation rights, in derogation of the two state court orders. McKnight's claims are thus inextricably intertwined with the Family Court adjudication. Although McKnight has crafted some of his claims as being grounded in the Constitution or federal statute, the relief he seeks is reversal of the Family Court adjudication.

The Third Circuit recently addressed a similar scenario in *Marran v. Marran,* 376 F.3d 143 (2004). *Marran* involved a mother who refused to comply with a state court's custody order that granted the child's father visitation rights. *See id.* at 147. While an appeal of the state court's decision was pending, the mother filed an action in federal district court, alleging violations of her constitutional rights to the "companionship, care, custody, and management" of her daughter. *See id.* at 152. In the federal action, the mother sought, *inter alia,* a declaratory judgment that the state court's findings were "null and void and may not be relied upon by for any purpose." *Id.* The Third Circuit rejected the mother's claim, reasoning that although the mother's claims were ostensibly constitutional challenges, the complaint was a "skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the [state court], in contravention of *Rooker–Feldman.*" *Id.* (quoting *Stern v. Nix,* 840 F.2d

208 (3d Cir.1988), which applied the quoted principle where an attorney challenged the Pennsylvania Supreme Court's decision to disbar him).

In the instant case, plaintiff's ostensibly federal claims likewise represent an indirect attack on the custody determination already adjudicated in the Family Court. As already stated, a grant of McKnight's requested relief would invalidate the Family Court's October 6, 2000 order. Consequently, McKnight's claims constitute "the type of indirect appeal of a state court determination [that] is prohibited by *Rooker–Feldman*". *Id.*

McKnight's proper avenue of appeal lies in the Pennsylvania state courts. As the Third Circuit stated in *Parkview Associates Partnership v. City of Lebanon,* 225 F.3d 321, 324 (3d Cir.2000), "a party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court under [28 U.S.C.] § 1257." Because McKnight is essentially seeking federal court review of the decision of the Family Court denying him visitation rights, the *Rooker–Feldman* doctrine prohibits the Court from adjudicating his claims. The Court is thus without subject matter jurisdiction to hear all claims against all defendants implicating the litigation leading up to and including the Family Court's custody orders.[7]

### C. Plaintiff's claims relating to the Family Court's alleged failure to process his ex parte petition

McKnight contends that Defendant Mary Lou Baker, the Family Court official

---

7. Defendants Middleton, Klaw, and Berner & Klaw have raised the "domestic relations exception" to the exercise of federal jurisdiction. Although these defendants' argument concerning the applicability of the domestic relations exception to this case appears to have merit, given the disposition of this case under the *Rooker–Feldman* doctrine, the

Court need not decide whether the domestic relations exception bars this action. *See generally Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (recognizing a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees").

allegedly in charge of processing case filings, and Defendant Mark Alleva, the Clerk of the Family Court (hereinafter "the Family Court Defendants"), have refused to process his ex parte petition for visitation, which he allegedly filed on September 27, 2002.[8] Because he has not been granted a hearing on that alleged petition, McKnight contends that the Family Court Defendants have denied him his constitutional rights (1) of access to the Family Court, (2) of privacy (parenthood), (3) to be free from discrimination on the basis of his race (African–American) and gender (male), and (4) to be free from retaliation for asserting his right of access to federal court.

The Court concludes that the *Rooker–Feldman* doctrine does not divest the Court of subject matter jurisdiction over these claims. These claims were not actually litigated in the state court and they are not inextricably intertwined with the state court adjudication. These claims speak to the Family Court Defendants' alleged failure to process McKnight's petition shortly after September 27, 2002, roughly two years after the Family Court issued its October 6, 2004 order suspending McKnight's visitation rights. No state court has decided either the factual issue whether the Family Court Defendants failed to process McKnight's petition or the legal issue whether, if so, such a failure constitutes a violation of one of McKnight's constitutional rights. Consequently, a ruling by this Court would not disturb a prior state court ruling on these issues. Moreover, should the Court find the Family

Court Defendants failed to process McKnight's petition and that this failure violated one of his constitutional rights, such a finding would have no effect on the Family Court's October 6, 2000 order suspending McKnight's custody rights. *See, e.g., Gentlemen's Retreat, Inc. v. City of Philadelphia,* 109 F.Supp.2d 374 (E.D.Pa. 2000), *aff'd,* 276 F.3d 577 (3rd Cir.2001) (finding no *Rooker–Feldman* bar to federal court's subject matter jurisdiction where "there ha[d] been no decision by the state courts with respect to the propriety of the Cease Operations order issued against plaintiff"). The Court is, therefore, satisfied that it has subject matter jurisdiction over plaintiff's claims as they relate to the Family Court Defendants' alleged failure to process his petition. Having jurisdiction, the Court will proceed to analyze the merits of McKnight's claims of violations of his rights (1) of access to the Family Court, (2) of privacy (parenthood), (3) to be free from discrimination on the basis of his race (African–American) and gender (male), and (4) to be free from retaliation for asserting his right of access to federal court.

■ The Court finds that McKnight has offered sufficient evidence in support of these claims to defeat the Family Court Defendants' motion for summary judgment. McKnight contends that the Family Court Defendants have denied him certain constitutional rights. *See* Pl.'s Am. Compl. ¶¶ 156, 170. Specifically, McKnight alleges that, because he notified the Family Court in the summer of 2000 that he intended to seek an injunction and

---

**8.** Whether McKnight attempted to file the September 27, 2002 petition and whether the Family Court received the petition are disputed questions of fact. McKnight's assertion that he filed the petition with the Family Court is directly contradicted by the court's docket report, which shows that the last docket entry in *McKnight v. Middleton,* DR# OC–

0000106, was the order entered on October 6, 2000. McKnight stated in his deposition that he has no record that the Family Court received the petition, but that he mailed the petition via standard U.S. Mail and had no reason to believe the Family Court did not receive it.

other relief against it in federal court for violation of his constitutional rights, the Family Court Defendants have refused to process his petition for visitation. Pl.'s Compl. ¶ 14.

Whether the Family Court Defendants committed the act giving rise to McKnight's claims, however, is disputed. Although McKnight alleges that he filed the September 27, 2002 petition with the Family Court, there is no record of the petition on the Family Court docket. Under these circumstances, drawing a reasonable inference in favor of McKnight, the non-moving party, the Court finds that a genuine issue of material fact exists as to whether the Family Court Defendants failed to process the September 27, 2002 petition and, if so, whether they violated one of McKnight's protected rights. Accordingly, the Family Court Defendants' motion for summary judgment will be denied without prejudice with respect to plaintiff's claims that are grounded in the Family Court Defendants' alleged failure to process plaintiff's petition.

Because a genuine issue of material fact exists, McKnight is entitled to test the credibility of Defendant Baker's assertion that the Family Court never received the September 27, 2002 petition, and to inquire into Defendant Alleva's knowledge of the circumstances surrounding the September 27, 2002 petition. In order to explore this issue, the Court will permit McKnight to take the depositions of the Family Court Defendants limited to the circumstances surrounding whether the plaintiff filed or attempted to file the September 27, 2002 petition, and what knowledge each of these defendants has, if any, of these circumstances.[9] Upon completion of the deposition, the Family Court Defendants may reassert their motion for summary judgment, if warranted, based upon a more complete record.[10]

## III. CONCLUSION

For the foregoing reasons, the Court is without subject matter jurisdiction to hear plaintiff's claims that implicate the litigation leading up to and including the Family Court decisions to award custody of Elena to Middleton and to suspend McKnight's visitation rights. These claims will, therefore, be dismissed. The balance of McKnight's claims may proceed on the basis of the Family Court's alleged failure to process his September 27, 2002 petition for visitation rights.

Accordingly, the defendants' motions for summary judgment will be granted in part and denied in part. An appropriate order follows.

### Order

**AND NOW** this 4th day of November, 2004, upon consideration defendants' Mo-

---

9. This limited discovery is not intended to provide plaintiff with the ability to explore wholesale whether all defendants violate his civil rights. All such claims are barred by under the *Rooker–Feldman* doctrine.

To ensure the efficient administration of justice, the deposition will take place in Courtroom 11A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, at a date and time to be determined by the Deputy Clerk upon consultation with the Family Court Defendants and the plaintiff. The Court will preside at the deposition to ensure faithful compliance with this Order.

10. Plaintiff has also brought certain conspiracy claims against all defendants. To the extent these claims implicate the litigation to and including the Family Court's custody decisions, they are barred under the *Rooker–Feldman* doctrine. To the extent, however, these claims pertain to the Family Court's alleged failure to process McKnight's September 27, 2002 petition, these claims shall be held in abeyance pending the completion of the Family Court Defendants' depositions. Defendants' motions for summary judgment with respect to these conspiracy claims are, therefore, denied without prejudice.

tions for Summary Judgment (doc. nos.80, 81, 82), the Court's Rule to Show Cause (doc. no. 95), and plaintiff's Response to the Rule to Show Cause (doc. no. 97), it is hereby **ORDERED** that defendants' Motions for Summary Judgment are **GRANTED in part**, as to all claims against all defendants implicating the litigation leading up to and including the Family Court's custody orders.

It is **FURTHER ORDERED** that defendants' Motions for Summary Judgment are **DENIED in part without prejudice**, as to all claims based upon the Family Court's alleged failure to process McKnight's September 27, 2002 petition for visitation rights.

And it is **FURTHER ORDERED** that the following motions are **DENIED as moot**:

1. Plaintiff's Motion to Compel Defendants Marni Sweet and Parent Infant Center to Produce Discovery and to Recover Costs of Motion (doc. no. 78).

2. Plaintiff's Motion to Compel Defendant Dawn M. Middleton to Produce Discovery (doc. no. 79).

3. Motion and Affidavit by Anthony J. Mcknight for Continuance to Conduct Discovery in Order to Respond to Defendants Dawn M. Middleton, Margaret Klaw, Esq., and Berner & Klaw's Motion for Summary Judgment (doc. no. 87).

**AND IT IS SO ORDERED.**